UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

KENROY RICHMOND et al.,
                              Plaintiffs

          -against-                                          No. 08 Civ. 3577 (LTS)(HBP)

GENERAL NUTRITION CENTERS INC. et al.,
                              Defendants.

--------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

          Plaintiffs Kenroy Richmond ("Richmond"), Samuel Warkie ("Warkie"), Prince

R. Siaw ("Siaw"), and Marlon Hattimore ("Hattimore" and, collectively, "Plaintiffs") bring this

employment discrimination action against General Nutrition Centers Inc. ("GNC"), which

employed each of the plaintiffs at various times from 1994 to 2009, and Neil Blitzer ("Blitzer"

and, together with GNC, "Defendants").  Plaintiffs assert that Defendants violated Section 1981

of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and New York Executive Law § 296 et seq.

("NYSHRL").  These federal and state claims are based on allegations that Defendants subjected

Plaintiffs to a hostile work environment and disparate treatment on the basis of race and/or

national origin and retaliated against Plaintiffs when they complained about this treatment.

Plaintiffs also assert a claim under New York common law for negligent supervision.  This claim

is based on allegations that defendant Blitzer, an employee of defendant GNC, unlawfully

discriminated against Plaintiffs, with GNC's knowledge, and that GNC acted negligently in

training or retaining him.  Additionally, Plaintiffs bring claims against Defendants for wrongful

termination on the basis of race and/or national origin.  The Court has jurisdiction of Plaintiff's

Title VII and Section 1981 claims under 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. §

2000e-5(f)(3).  The Court exercises supplemental jurisdiction of Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367.

Defendants have moved for summary judgment dismissing Plaintiffs' complaint

in its entirety. Defendants have also moved to strike Plaintiffs' opposition to Defendant's motion

for summary judgment in its entirety.  The Court has considered thoroughly all of the parties'

submissions and arguments in connection with these motions. For the following reasons, each of

Defendants' motions is granted in part and denied in part.

BACKGROUND

The following material facts are undisputed, unless otherwise noted.[1]

Plaintiff Richmond

Richmond is of Jamaican birth.  (Defs.' 56.1 St. ¶ 1.)  Richmond began working

as a Sales Associate for GNC in its Greenburgh, New York store (the "Greenburgh Store") in

1994.  (Id. ¶ 3.)  In 1998, Richmond was promoted to Store Manager of the Greenburgh Store.

(Id. ¶ 4.)  Blitzer was hired by GNC in 1998.  The parties disagree about the periods during

which Blitzer supervised GNC stores in the region in which Plaintiffs worked.  (Id. ¶¶ 101-102;

Richmond Aff. ¶ 96; Peprah Decl. ¶ 8; Warkie Aff. ¶ 4.)

---

[1]    Facts characterized as undisputed are identified as such in the parties' statements
pursuant to Local Civil Rule 56.1 or drawn from evidence as to which there is no
non-conclusory contrary factual proffer.  Citations to the parties' respective
S.D.N.Y. Local Civil Rule 56.1 statements ("__ 56.1 St.") and responses thereto
("__ 56.1 Resp. St.") incorporate by reference citations to the underlying
evidentiary submissions.

During his tenure at GNC, Richmond received a number of written warnings from Blitzer for failure to adhere to certain store policies. (See, e.g., Defs.' 56.1 St. ¶¶ 12, 15, 29.) For example, Richmond received a written warning on July 18, 1999, for failing to deposit cash register funds in the store safe. (Id. ¶ 12.)  Plaintiffs dispute the validity of these warnings, claiming either that the actions for which Richmond was reprimanded were fabricated or that Blitzer purposefully put Richmond in a position in which he was unable to avoid breaking these rules. (See, e.g., Decl. of Daryl Davis ("Davis Decl.") Ex. J ("Richmond Dep.") at 54:14-55:25, 106:1-09:10.)  Beginning in 2002, Richmond received progressively more negative performance reviews from Blitzer in addition to continued contested warnings. (See, e.g., Defs.' 56.1 St. ¶¶ 11, 13, 14-16, 18, 20, 27, 29-30, 34-36, 38.)  These performance reviews and warnings led to denials of wage increases, relocation to another store, and ultimately to dismissal. (Id. ¶¶ 23-24, 27-28.)  Richmond denies that these performance reviews and warnings were warranted. (See, e.g., Richmond Dep. at 59:4-74:13, 82:1-148:9; Davis Decl. Ex. H ("Richmond Aff.") ¶¶ 43-48.)

In 2005, Richmond was transferred from the Greenburgh Store to the White Plains, New York store (the "White Plains Store"). (Defs.' 56.1 St. ¶¶ 21-25.)  Plaintiffs claim that this transfer was forced upon Richmond by Blitzer, and undesired by Richmond because, unlike the Greenburgh Store (which was the highest performing store in the district), the White Plains Store had a very low volume of sales. (Richmond Dep. at 82:1-99:4, 154:20-55:20; Richmond Aff. ¶¶ 43-48, 64-65.)  Defendants claim that Richmond was asked to leave the Greenburgh Store because of his poor performance there. (Defs.' 56.1 St. ¶ 21, 23.)  According to Plaintiffs, Richmond's bonuses as Store Manager were tied to the overall performance of his store and he thus received lower compensation as a result of his transfer to a worse-performing

store and loss of his clientele at the Greenburgh Store. (Richmond Dep. at 82:1-99:4, 154:20-5:20; see also Richmond Aff. ¶¶ 43-48, 64-65.)

There is evidence that Blitzer made statements that he wanted to terminate all or most black employees from GNC, and Plaintiffs argue that Richmond's allegedly unwarranted warnings and performance reviews were part of Blitzer's campaign to accomplish this goal. (Davis Decl. Ex. Q ("Hattimore Aff.") ¶¶ 9, 20, 21; Richmond Aff. ¶¶ 33-35.) Plaintiffs claim that Blitzer enlisted other GNC supervisors to assist him in accomplishing this goal through similar baseless warnings. (Hattimore Aff. ¶ 43.) There is also evidence that Blitzer made derogatory comments to Richmond about his race and national origin. For example, Richmond testified at his deposition that Blitzer routinely commented that Richmond should not be allowed to speak to customers because of his accent, suggested that he used illegal drugs because of his Jamaican heritage, and told him that other black employees were not doing a good job because of their race. (Richmond Dep. at 27:18-30:9, 125:1-28:17, 158:1-73:16.) Plaintiffs claim that Richmond made complaints about this treatment to the Human Resources department of GNC. (Richmond Aff. ¶¶ 29-32.)

Richmond continued to receive written warnings and poor performance reviews while serving as the Store Manager at the White Plains store. (Defs.' 56.1 St. ¶¶ 29, 34, 36.) Plaintiffs maintain that these warnings and performance reviews were not warranted and were part of Blitzer's scheme to rid GNC of black and African employees. (See, e.g., Richmond Dep. at 106:5-09:6, 114:20-146.6; Richmond Aff. ¶¶ 60-80.) Richmond was terminated from GNC on December 11, 2006. (Defs.' 56.1 St. ¶ 39.) He filed a charge of discrimination on March 30, 2007. (Defs.' 56.1 St. ¶ 42.) He filed the instant action on April 14, 2008.

Plaintiff Warkie

Warkie is from Ghana.  (Defs.' 56.1 St. ¶ 86.)  Warkie was hired as a Sales

Associate in GNC's White Plains Store in 1997.  (Id. ¶¶ 90-91.)  Warkie received standard raises

as a Sales Associate, until he was promoted to part-time Assistant Manager of the store in 2001.

(Id. ¶¶ 94-95.)  Starting in 2002, Warkie received a number of written warnings for failure to

adhere to certain GNC store policies.  (See, e.g., Id. ¶¶ 98-99, 109-11, 114-15.)  In February

2003, Warkie was demoted from Assistant Manager to Sales Associate.  (Id. ¶ 108.)  Plaintiffs

maintain that these warnings and demotion were unwarranted and due to Blitzer's discriminatory

campaign against black and African GNC employees.  (See, e.g., Davis Decl. Ex. M ("Warkie

Aff.") ¶¶ 9, 11-12, 17; Davis Decl. Ex. L ("Warkie Dep.") at 164:2-166:25, 192:14-23.)

Plaintiffs claim that, while Richmond was employed as Warkie's manager at the White Plains

Store, Blitzer directed him to fabricate warnings and unfairly discipline Warkie because he was

African.  (Richmond Dep. at 187:1-16.)  Although Defendants claim that Warkie's demotion was

due to his poor performance and the lack of need for Assistant Managers in that region (Defs.'

56.2 St. ¶ 104), Plaintiffs proffer that employees not in this protected class were allowed to

continue as Assistant Managers and that the real reason for the demotion was Blitzer's hatred of

black and African GNC employees.  (Warkie Aff. ¶ 10.)  Plaintiffs also claim that, for the same

reasons, Warkie was passed over for promotion in favor of less qualified Caucasian and Hispanic

candidates.  (Id. ¶¶ 12, 28.)

As with Richmond, there is evidence that Blitzer made derogatory statements to

Warkie about his African heritage.  There is evidence that Blitzer routinely told Warkie to "Go

back to Africa," criticized his accent, and advised him he was being demoted because an African

should not be in his position.  (Richmond Dep. at 125:24-26:15; Warkie Aff. ¶¶ 6, 15.)  Warkie

"often complained to Richmond, [his] manager, about Blitzer's treatment of [Warkie,]" and

Richmond "protested to Blitzer to leave his employees alone," all to no avail. (Warkie Aff. ¶

24.)  Warkie filed his charge of discrimination on April 2, 2007.  (Defs.' 56.1 St. ¶ 126.)  He

filed the instant action, while still employed by GNC, on April 14, 2008.

Plaintiff Siaw

        Siaw is from Ghana.  (Defs.' 56.1 St. ¶ 44.)  Siaw began working at GNC as a

Sales Associate in the Greenburgh Store in 1999.  (Id. ¶ 52.)  Siaw received regular raises until

he was promoted to Assistant Manager in 2001.  (Id. ¶ 57.)  In January 2003, Siaw was demoted

to Sales Associate.  (Davis Decl. Ex. N ("Siaw Aff.") ¶¶ 5-6; Richmond Aff. ¶ 7; Davis Decl.

Ex. AA ("Peprah Decl.") ¶¶ 2-8.)  Defendants claim that the decision to demote Siaw was a

mutual decision between Blitzer and Richmond, who was Siaw's Store Manager at the time,

based on Siaw's performance problems.  (Defs.' 56.1 St. ¶¶ 62-64.)  Plaintiffs, on the other hand,

maintain that Siaw had no performance problems, and that Blitzer decided to demote Siaw on his

own and told Richmond that he planned to do so because Siaw was African.  (Richmond Aff. ¶¶

7, 10-15; Peprah Decl. ¶¶ 2-8; Richmond Dep. at 27:18-30:6, 32:5-34:1.)  Richmond further

claims that, at Blitzer's direction, he fabricated false warnings against Siaw, which created a

record of inaccurate performance issues.  (Richmond Dep. at 166:3-67:18, 187:1-18.)

        Moreover, there is evidence that Siaw was subject to regular verbal assaults by

Blitzer.  For example, Plaintiffs allege that Blitzer frequently called Siaw an "African booty

scratcher" and "the bush man," sent him to the back of the store to prevent him from assisting

customers on account of his national origin, which affected Siaw's commissions, and told him to

"take [his] African self back to Africa."  (Davis Decl. Ex. P ("Hattimore Dep.") at 71:24-72:25,

74:25-75:24.)  Siaw also alleges that, because of Blitzer's campaign against African GNC

employees, he was denied raises and promotions.  (Siaw Aff. ¶ 12.)  He claims that "[f]rom 2003 up until [his] termination in 2006" he "continu[ously] complained" to GNC Human Resources about Blitzer's treatment.  (Id. ¶ 13.)  Defendants allege that in 2006, GNC began receiving complaints about Siaw's work performance from his coworkers and GNC customers.  (Defs.' 56.1 St. ¶¶ 72-73.)  Defendants maintain that Siaw was terminated on April 20, 2006, because of his poor work performance.  (Id. ¶¶ 74-80.)  Plaintiffs dispute Defendants' proffered reasons for Siaw's termination, claiming that the complaints and poor performance relied on by GNC are completely false, and were fabricated by GNC in order to serve Blitzer's purpose of ridding GNC of African employees.

Siaw filed his charge of discrimination on March 30, 2007.  (Defs.' 56.1 St. ¶ 81.) He filed the instant complaint on April 14, 2008.

<u>Plaintiff Hattimore</u>

Hattimore is African American.  (Defs.' 56.1 St. ¶ 130.)  In 2004, Hattimore was hired by Richmond as a Sales Associate at GNC's Greenburgh Store.  (Id. ¶ 134.)  Plaintiffs claim that, shortly after he was hired, Blitzer visited the store and, after seeing him, questioned Richmond about hiring another black employee and told Richmond that Hattimore should be fired on account of his race.  (Davis Decl. Ex. Q ("Hattimore Aff.") ¶ 4.)  However, Plaintiffs allege that, after Blitzer learned that Hattimore was in fact biracial, Blitzer began to "treat [him] differently" from the other black employees.  (Id. ¶¶ 7-8.)  Hattimore was eventually transferred and promoted to Store Manager in Store 9595.  (Defs.' 56.1 St. ¶¶ 139-44.)

Hattimore alleges that, during his time as Store Manager, he noticed that at least two Caucasian employees, subordinate to him and with less experience, were being paid more than he was.  (Hattimore Aff. ¶¶ 39-40.)  He also claims that Blitzer forced him to fire another

black employee by telling him that he would be terminated if he didn't fire the employee.  (<u>Id.</u> ¶¶ 31-32.)  Moreover, he details a pattern of offensive, racially charged statements by Blitzer, as do the other Plaintiffs.  Hattimore has testified that Blitzer made frequent comments to him such as that another African American employee was "ghetto black trash" and "you can't take a hoodlum and put him in a business suit."  (<u>See, e.g.</u>, Hattimore Dep. at 120:9-22:5.)  Hattimore claims that, "[f]rom 2004 up until [his] termination in 2006," he made complaints to GNC Human Resources about Blitzer's discriminatory treatment of black GNC employees. (Hattimore Aff. ¶ 19.)

Defendants claim that Hattimore was arrested for his involvement in a fight that broke out in his store between his employee and a friend of Hattimore.  (Defs.' 56.1 St. ¶¶ 145-51.)  Hattimore denies his involvement in the fight, and claims that he merely stepped in to try and stop an ongoing fight between his employee and the employee of a neighboring store. (Hattimore Aff. ¶ 37.)  Defendants further claim that Hattimore was not terminated by GNC, and instead that he left voluntarily in April 2006.  (Defs.' 56.1 St. ¶¶ 153-54.)  Hattimore, on the other hand, claims that, while he was on vacation, a Caucasian was hired in his place as Store Manager and that, when he returned, Blitzer and GNC headquarters refused to give him an explanation or speak to him.  (Hattimore Aff. ¶¶ 52-56.)  Hattimore did not return to work for GNC.  (<u>Id.</u>)

Hattimore filed his charge of discrimination in June 2007.  (Defs.' 56.1 St. ¶ 157.) In response, Defendants stated that "Mr. Hattimore . . . was terminated for legitimate, non-discriminatory reasons."  (Davis Decl. Ex. W at 4.)  Hattimore filed the instant action on April 14, 2008.

Plaintiffs have produced evidence of other lawsuits against Blitzer and GNC initiated by black and African former employees of GNC alleging similar facts.  (See, e.g., Davis Decl. Ex. T.)

DISCUSSION

Plaintiffs' submission in opposition to the summary judgment motion violates a number of applicable procedural rules.  Plaintiffs completely disregard their responsibility to address the legal standards for their claims and do not sufficiently respond to Defendants' arguments or cite to the record with any specificity.  Their submission has been an unwarranted burden on the Court that will not be tolerated going forward.  However, in light of the evidence of discrimination that the Court has gleaned from the volume of material submitted, the Court has endeavored to address the substantive merits of Plaintiffs' claims.  Nonetheless, Plaintiffs are urged to associate or retain experienced federal counsel if they wish to avoid sanctions going forward.

Defendants' Motion to Strike Plaintiffs' Opposition

In connection with Defendants' motion for summary judgment (discussed below), Defendants argue that Plaintiffs' opposition should be stricken, in whole or in part, because: (1) Plaintiffs' opposition is not timely; (2) Defendants are prejudiced by various non-party declarations submitted by Plaintiffs; (3) Plaintiffs' affidavits submitted in support of their opposition to summary judgment contradict statements made during their depositions; and (4) certain exhibits Plaintiffs attach to their opposition are inappropriately argumentative.

Federal Rule of Civil Procedure 16 provides that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[A] district court [may] . . . deny[] leave to [make a filing] after the deadline set in the scheduling order where the

moving party has failed to establish good cause. Moreover . . . a finding of 'good cause' depends on the diligence of the moving party." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (involving motion to amend pleading).

Despite several extensions, Plaintiffs missed every deadline set by the Court for the filing of their opposition to Defendants' motion for summary judgment. Plaintiffs have not provided a satisfactory explanation for their egregious tardiness, except for vague statements about Plaintiffs' counsel's personal emergencies. It is clear that Plaintiffs have not demonstrated diligence or good cause under Rule 16. However, because this is a discretionary standard, the Court declines to strike the whole of Plaintiffs' opposition. Defendants have not demonstrated that they have suffered prejudice from Plaintiffs' delay. Moreover, Plaintiffs' submission contains evidence indicative of flagrant discrimination against Plaintiffs. Because of the importance of addressing the merits of Plaintiffs discrimination claims, the Court denies Defendants' motion to strike the whole of Plaintiffs' opposition to Defendants' motion for summary judgment for untimeliness.

Defendants also move to strike the declarations of non-parties Gladys Kumi, Kissi Peprah, and Pete Ortiz. Defendants base their argument on a discovery dispute between Plaintiffs and Defendants. In interrogatories, Defendants asked Plaintiffs to identify anyone they complained to of discrimination, harassment, or retaliation. (Defs.' Br. at 5.) Plaintiffs identified 46 individuals, including the declarants. (Id.) According to Defendants, Plaintiffs' interrogatory answers were insufficient in that they did not provide enough information about these individuals. Plaintiffs identified the declarants by name and stated that they "have made statements at various times before and/or after this action commenced about the discriminatory practices of GNC and/or its failure to implement and enforce anti-discrimination policies and

practices." (Pls.' Br. at 5.) Defendants complain that Plaintiffs did not give a detailed description of the extent of each declarant's knowledge and the circumstances of that knowledge, and thus they are prejudiced by the submission of these declarations. However, Plaintiffs' responses to Defendants' interrogatories provided Defendants a sufficient basis to seek to depose the non-party declarants as to any complaints of discrimination, harassment or retaliation. Defendants' choice not to do so does not entitle them to insulation from the testimony of these witnesses. Accordingly, Defendants have not shown that they have been prejudiced by Plaintiffs' submission of these three non-party declarations and the Court denies the motion to strike them.

Defendants also claim that affidavits submitted by Plaintiffs in opposition to summary judgment contradict statements they made in depositions. It is well settled that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. . . . Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir. 1996). However, Defendants have not demonstrated that Plaintiffs' affidavits contradict their deposition testimony. Defendants point to instances in their depositions where Plaintiffs were asked broad questions such as, "have we discussed all the reasons that you are claiming racial discrimination?" (Warkie Dep. at 212:6-15.) Although Plaintiffs responded affirmatively to such open-ended questions, the supplemental detail provided later in their affidavits does not directly contradict their statements made in depositions and it does not appear that Plaintiffs are attempting to artificially create issues of fact. Therefore, the Court denies Defendants' motion to strike Plaintiffs' affidavits.

Finally, Defendants take issue with three exhibits that are charts created by Plaintiffs and submitted in opposition to the motion for summary judgment. Exhibit A summarizes statements allegedly made by defendant Blitzer; Exhibit B summarizes allegedly inconsistent statements made by Defendants during deposition testimony; and Exhibit D is a list of other employment discrimination actions against Defendants alleging similar facts. Plaintiffs contend that these exhibits are admissible because summaries of admissible evidence are admissible when the underlying evidence is too voluminous to be presented conveniently. However, the Court is able to review the underlying evidence without the need for Plaintiffs' summary. Moreover, Plaintiffs' "exhibits" are inappropriately argumentative. Thus, the Court grants Defendants' motion to strike Exhibits A, B, and D to Plaintiffs' opposition to the summary judgment motion.

Summary Judgment Motion

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact). Material facts are ones that could potentially affect the outcome of the suit; factual disputes that are irrelevant or unnecessary will not be considered. Id. at 248. If the moving party can then show that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," it has carried its burden. Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). If the moving party has satisfied its burden, the non-moving party must present evidence to show that there is a genuine material factual issue to counter the summary

judgment motion. <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002). <u>See also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) ("[T]he party opposing the motion for summary judgment bears the burden of responding only after the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact.") (citations omitted). The non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts" to defeat the motion. <u>Caldarola</u>, 298 F.3d at 160.

Disparate treatment and retaliation claims brought under Title VII, Section 1981, and NYSHRL are analyzed under the three-step burden shifting analysis established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). <u>See</u> <u>Reed v. A.W. Lawrence & Co., Inc.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996) (applying burden-shifting analysis to retaliation claims); <u>Patterson v. County of Oneida, N.Y.</u>, 375 F.3d 206, 226 (2d Cir. 2004) (holding that the same substantive standards apply for Title VII and Section 1981); <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 565 n. 1 (2d Cir. 2000) ("[C]onsideration of claims brought under the state . . . human rights law[] parallels the analysis used in Title VII claims"). Similarly, hostile work environment claims brought under Section 1981 and NYSHRL are subject to the same analysis as Title VII hostile work environment claims. <u>See</u> <u>Cruz</u>, 202 F.3d at 564 n. 1; <u>Kennedy v. J.P Morgan Chase & Co.</u>, 325 F. Supp. 2d 401, 403, 408-09 (S.D.N.Y. 2004). Plaintiffs correctly note that New York City Human Rights Law ("NYCHRL") claims require "an independent liberal construction analysis in all circumstances, even where State and federal civil rights laws have comparable language." <u>Williams v. The New York City Housing Authority</u>, 61 A.D.3d 62, 872 N.Y.S.2d 27, at 31 (2009). However, Plaintiffs have not asserted any claims under NYCHRL, and this argument therefore is not germane.

In resisting a motion for summary judgment on disparate treatment and retaliation claims, a plaintiff must first proffer evidence sufficient to establish a prima facie case of prohibited discrimination. McDonnell Douglas Corp., 411 U.S. at 802. Once a plaintiff has made out a prima facie case, the burden shifts to the employer to offer some legitimate, nondiscriminatory rationale for its actions. Id. An employer sustains its burden "by producing any evidence of nondiscriminatory reasons, whether ultimately persuasive or not." Weeks v. N.Y. State Div. of Parole, No. 00 Civ. 5865 (SJ), 2002 WL 32096593, at *4 (E.D.N.Y. Nov. 25, 2002) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). "The employer need not prove by a preponderance of the evidence that the reasons for his actions were not discriminatory, but may simply present clear and specific reasons for the action." Gibbs v. Consol. Edison Co. of N.Y., Inc., 714 F. Supp. 85, 89 (S.D.N.Y. 1989) (internal quotation marks omitted). If the employer meets its burden, the plaintiff then is required to "present sufficient evidence for a reasonable jury to conclude that [the defendant] discriminated against him" in the manner prohibited by the statute, and that the defendant's stated reason is a pretext for the prohibited discriminatory action. Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000).

Title VII Claims Against Blitzer

Defendants correctly point out, and Plaintiffs do not dispute, that individuals are not "employers" subject to Title VII liability. Accordingly, Defendants' motion for summary judgment is granted to the extent that Plaintiffs' Title VII claims are asserted against Blitzer.[2]

---

[2]   Although Blitzer is not subject to suit under Title VII, the Court will refer to "Defendants" in the plural when addressing their arguments, as GNC's arguments in the Title VII context are equally applicable to the other statutes invoked by Plaintiffs and Blitzer is potentially subject to individual liability under the NYSHRL and Section 1981.

Statute of Limitations

Title VII claims are subject to administrative agency complaint filing requirements as set forth in 42 U.S.C. § 2000e-5(e)(1). In New York, an individual must file a charge of discrimination within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e-5(e)(1) (West 2006). New York's three-year statute of limitations applies to Plaintiffs' claims under Section 1981 and the NYSHRL. Butts v. City of New York Dept. of Hous. Preservation and Development, 990 F.2d 1397, 1412 (2d Cir.1993); Murphy v. American Home Products Corp., 58 N.Y.2d 293, 307 (1983). Title VII "precludes recovery for discrete acts of discrimination or retaliation that occurred outside the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). Moreover, each discrete discriminatory act "constitutes a separate actionable 'unlawful employment practice,'" id. at 114, and "starts a new clock for filing charges," id. at 113. Examples of discrete discriminatory acts include "termination, failure to promote, denial of transfer, or refusal to hire." Id. at 114. By contrast, a hostile work environment claim will not be barred by the statute of limitations if all acts underlying the claim are part of the same unlawful practice and at least one such act falls within the statutory period. Id. at 122.

Plaintiffs' Title VII claims that are premised on discrete acts of alleged discrimination that occurred more than 300 days prior to the filing of their charges of discrimination are time-barred under this standard. Their Section 1981 and NYSHRL claims that are premised on discrete acts of alleged discrimination that occurred more than three years prior to filing the complaint are also time-barred.

As a result, Plaintiff Warkie's claims under Title VII, Section 1981, and NYSHRL for disparate treatment on the basis of his demotion must be dismissed. Warkie's

demotion occurred in February 2003. Warkie did not file his charge of discrimination until April 2, 2007, more than four years after his demotion. He did not file the instant complaint until April 14, 2008, more than five years after the alleged discrimination occurred. Therefore, all of Warkie's claims for disparate treatment premised on his demotion are time-barred.

Similarly, Siaw's claim of disparate treatment premised on his demotion are time-barred under all applicable statutes of limitation. Siaw was demoted in January 2003. He did not file his charge of discrimination until March 30, 2007, and did not file the instant lawsuit until April 14, 2008. As both of these dates fall outside the relevant statues of limitations, he is time-barred from bringing a disparate treatment claim based on his demotion. Siaw's additional Title VII claims are likewise time-barred. Siaw was terminated on April 20, 2006, more than 300 days before he filed his charge of discrimination.

Hattimore's Title VII claims are time-barred for the same reasons. Hattimore was allegedly terminated in April 2006, but did not file his charge of discrimination until June 2007, after the expiration of the applicable statute of limitations for Title VII claims.

Plaintiffs attempt to resuscitate their time-barred claims by arguing that, because Plaintiffs are a class, as long as the named plaintiff's claims are timely, the other plaintiffs may "piggyback" on his claim with claims that would otherwise be time-barred. This argument is unavailing. All four Plaintiffs seek to proceed on their own behalf as well as on behalf of a class as named Plaintiffs. Furthermore, the "piggyback" or "single filing" doctrine to which they refer is not available to individuals who have filed their own EEOC charges. Holowecki v. Federal Express Corp., 440 F.3d 558, 564 (2d Cir. 2006).

Accordingly, the Court grants summary judgment to Defendants on all of Warkie's disparate treatment claim premised on his demotion, all of Siaw's disparate treatment claim premised on his demotion, and all Title VII claims of Siaw and Hattimore.

Sufficiency of Timely Disparate Treatment Claims

To establish a prima facie case of disparate treatment, each Plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. McDonnell Douglas Corp., 411 U.S. at 802; Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). The parties dispute whether each Plaintiff has presented a prima facie case of discrimination to the Court.

Richmond

There is no dispute as to whether Richmond has proffered evidence sufficient to carry his burden as to the first two elements of a prima facie case of disparate treatment. Richmond's claims are based on three different alleged adverse employment actions: a demotion; wage increase denials; and termination of his employment. "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change in the terms and conditions of employment.'" Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (internal quotation marks and citations omitted). Defendants challenge Richmond's allegation of an adverse employment action on the basis of his demotion by arguing that he was not demoted, but merely

unwillingly transferred laterally to another store.  However, there is evidence that Richmond's

original store was the highest performing store in his region and that wage increases for store

managers at GNC were tied to the performance of their stores.  The allegedly lower volume of

sales at his new store, combined with the loss of his regular clientele and the resulting

commissions, could lead a reasonable fact-finder to find that Richmond suffered an adverse

employment action when he was transferred from the Greenburgh Store to the White Plains

Store.  Defendants do not dispute Richmond's claims that he was not granted raises or that he

was terminated.

   The parties also dispute whether Richmond has proffered a sufficient basis for an

inference of discrimination.  One way for a plaintiff to establish an inference of discrimination is

to show that the employer "treated him less favorably than a similarly situated employee outside

his protected group."  Graham v. Long Island Rail Road, 230 F.3d 34, 39 (2d Cir. 2000).

Because an employer engaged in discrimination is unlikely to leave a "smoking gun," Forsyth v.

Federation Employment and Guidance Service, 409 F.3d 565, 569 (2d Cir. 2005), a plaintiff

usually must rely on the "cumulative weight of circumstantial evidence" when proving bias,

Walker v. New York City Department of Corrections, No. 01 Civ. 1116 (LMM), 2008 WL

4974425, at *10 (S.D.N.Y. Nov. 19, 2008) (quoting Rosen v. Thornburgh, 928 F.2d 528, 533 (2d

Cir.1991)).

   There is sufficient evidence on the current record to permit an inference of

discrimination.  Defendants assert that the reason for the adverse employment actions against

Richmond was his poor job performance, as evidenced by a number of written warnings for

failure to adhere to store policy.  However, Richmond testified that these warnings were

undeserved and fabricated by Defendants for discriminatory reasons.  Richmond also testified

that he was asked to manufacture warnings against plaintiffs Siaw and Warkie for discriminatory reasons.  More significantly, Plaintiffs have proffered ample evidence that defendant Blitzer made repeated racially charged comments to Richmond and actively sought to rid GNC of non-Caucasian employees.  Richmond has carried his burden of proffering sufficient evidence to support a reasonable fact-finder's determination of discriminatory intent.

Once the plaintiff presents a <u>prima facie</u> case, the burden shifts to the defendant to provide evidence of a nondiscriminatory reason for the adverse action.  Defendants have presented evidence that the reason for the adverse actions against Richmond was his poor job performance, reflected in the written warnings against him.  The burden therefore shifts back to Plaintiffs to prove by a preponderance of the evidence that Defendants' proffered reasons are in fact pretexts for discrimination.

A plaintiff may rely at the rebuttal stage on the same facts underlying the <u>prima facie</u> case so long as a preponderance of the evidence could allow a reasonable fact-finder to find that a violation has occurred.  <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 78 (2d Cir. 2001).  Here, a reasonable fact-finder could find that the evidence Plaintiffs presented to show an inference of discrimination shows pretext as well.

Thus, the Court finds that a reasonable fact-finder could determine that Richmond was subjected to disparate treatment in violation of Title VII, Section 1981, and NYSHRL, and denies Defendants' motion for summary judgment on this claim.

<u>Warkie</u>

There is no dispute as to whether Warkie has proffered evidence sufficient to carry his burden as to the first two elements of a <u>prima facie</u> case of disparate treatment. Warkie's claims are based on two alleged adverse employment actions: a demotion and denials

of promotion.  For the reasons discussed above, Warkie cannot proceed on his claim for disparate treatment on the basis of his demotion.  Defendants do not dispute that Warkie was not promoted.  Rather, Defendants argue that there was a non-discriminatory reason for his non-promotion – that Warkie never requested promotions.  However, there is no evidence in the record that such a request was a necessary prerequisite to receiving a promotion at GNC.

Warkie has also proffered sufficient evidence to permit a fact-finder to find in his favor as to the last element of a prima facie case of disparate treatment.  Plaintiffs have proffered evidence that employees who were less experienced than Warkie, but not in the protected class, were promoted, while he was not.  Although Defendants argue that the lack of promotion can be explained by his poor job performance, there is sufficient evidence for a reasonable fact-finder to find that the written warnings against Warkie were pretexts for discrimination and that his job performance was not in fact sub-par.  Warkie denies that many of the warnings against him were warranted and Richmond states that he issued a fabricated written warning against Warkie at Blitzer's request.  Furthermore, there is abundant evidence in the record that Blitzer made statements that he would not promote, and in fact wanted to fire, Africans like Warkie, in addition to his alleged frequent racially charged comments.  This evidence is sufficient to enable a reasonable fact-finder to find pretext as well.  Therefore, the Court denies Defendants' motion for summary judgment on Warkie's disparate treatment claim on the basis of lack of promotions.

### Siaw

Defendants do not dispute that Siaw is a member of a protected class.  However, there is a dispute about whether he was qualified for the position he held.  Defendants argue that Siaw was not meeting GNC's expectations due to his alleged rule-breaking, and thus was not qualified for his position.  However, the Second Circuit has held that evidence of employee

misconduct does not, by itself, preclude a finding that an employee was qualified for his position. See Ruiz v. County of Rockland, 609 F.3d 486, 492 (2d Cir. 2010) ("misconduct may certainly provide a legitimate and non-discriminatory reason to terminate an employee, but . . . this issue is distinct from the issue of minimal qualification to perform a job"). Thus, Defendants' qualification argument is unavailing.

    Siaw's claims are based on four alleged adverse employment actions: a demotion; denials of wage increases; refusals to allow him to assist customers, which affected his ability to earn commissions; and termination of his employment. As explained above, Siaw cannot proceed on his disparate treatment claim insofar as it is predicated on his demotion or on any of his Title VII claims. Defendants do not otherwise dispute Siaw's allegations of adverse employment actions. Defendants argue that Siaw's evidence of an inference of discrimination, and of pretext, is merely speculative. However, Plaintiffs have proffered ample evidence that improper bias motivated the adverse actions taken against Siaw. Richmond has testified that Blitzer stated he wanted to fire Siaw because of his Ghanian heritage, and also that Richmond complied with Blitzer's request to officially warn Siaw for fabricated misconduct. These warnings ultimately led to Siaw's termination. Moreover, there is evidence that Blitzer frequently made negative statements to Siaw regarding his national origin. Although Defendants rely on the warnings as evidence of a non-discriminatory reason for the adverse employment actions against Siaw, there is adequate evidence that those warnings were unjustified and made in an atmosphere of discriminatory conduct, and thus for a reasonable fact-finder to find that the warnings were pretextual. Accordingly, the Court denies Defendant's motion for summary judgment on Siaw's Section 1981 and NYSHRL claims for disparate treatment on the basis of

the denials of wage increases, refusals to allow Siaw to assist customers, and his eventual termination.

### Hattimore

There is no dispute as to whether Hattimore has proffered evidence sufficient to carry his burden as to the first two elements of a prima facie case of disparate treatment. Hattimore's claims are based on two alleged adverse employment actions: discriminatory pay and termination of his employment.  For the reasons explained above, Hattimore may not proceed on his Title VII claims.  As to the viability of his remaining claims, Defendants do not dispute Hattimore's claim of disparate pay; there is evidence in the record that Hattimore was paid less than Caucasian employees in lower positions than his.  Defendants argue that Hattimore was not terminated, but quit.  However, there is a genuine factual dispute regarding this issue.  Although Defendants now argue that Hattimore left GNC voluntarily, in their response to his charge of discrimination they stated that he was terminated, as did Hattimore. Thus, there is a genuine issue of material fact as to whether Hattimore was terminated.

Likewise, Hattimore has proffered sufficient evidence to support the requisite inference of discrimination.  Hattimore testified that Caucasian subordinates were paid more than he was.  He also testified that he was told that he would be fired unless he terminated a black employee that he hired as a manager.

Defendants do not offer a non-discriminatory reason for the pay disparity.  Insofar as Defendants concede that Hattimore was terminated, they argue that such termination occurred after Hattimore's arrest during his alleged involvement in a dispute in or around the store.  The parties disagree about the factual circumstances of that dispute.  Thus, there is a genuine issue of material fact as to whether Hattimore's actions warranted termination.

Hattimore has also sustained his burden of proffering evidence of pretext regarding Defendants' allegedly discriminatory motive.  There is ample evidence that Blitzer made repeated disparaging comments to Hattimore about other members of his protected class and his desire that they be treated badly.  Therefore, the Court denies Defendants' motion for summary judgment with respect to Hattimore's Section 1981 and NYSHRL claims for disparate treatment.

Retaliation

"To make out a prima facie case of retaliation, an employee must show that he was engaged in a protected activity; that he suffered an adverse employment decision; and a causal connection between the protected activity and the adverse employment decision." Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir.1988).  Protected activity in this context includes formal as well as informal complaints.  See Rodriguez v. Beechmont Bus Serv., Inc., 173 F. Supp. 2d 139, 149 (S.D.N.Y. 2001).  "A plaintiff can demonstrate a causal connection (a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." Carr v. West LB Admin., Inc., 171 F. Supp. 2d 302, 309 (S.D.N.Y. 2001) (citing DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)).  As to the first of these methods of establishing a causal connection, "there is no bright-line rule which identifies the point at which temporal proximity between [protected activity] and the employer's alleged adverse employment action becomes too attenuated, on summary judgment, to sustain a charge of retaliation." Caruso v. Camilleri, No. 04-CV-167A (RJA), 2008 WL 170321, *27 (W.D.N.Y. Jan. 15, 2008) (citing Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d

545, 554-55 (2d Cir. 2001)).  Once a prima facie case has been made out, the burden shifts to the defendant to come forward with some nondiscriminatory reason for the adverse employment action. If the defendant satisfies his burden, the plaintiff must rebut the defendant's non-discriminatory reason with evidence demonstrating that the reason proffered by the defendant is a pretext for retaliation.

Defendants argue that Plaintiffs have failed to proffer any evidence of either a protected activity or a causal connection between such activity and any adverse employment decision. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz, 202 F.3d at 566; see also 42 U.S.C. § 2000e-3.  Plaintiffs proffer testimony contending that they made numerous complaints to their superiors and GNC headquarters over a period of several years regarding discriminatory treatment by Blitzer. Plaintiffs have therefore proffered sufficient evidence to sustain their burden with respect to protected activity.  While Plaintiffs do not proffer any direct evidence of retaliatory animus[3] and Plaintiffs describe their communications and their claims of retaliation in rather vague terms, they have proffered evidence that they complained of their treatment by Blitzer "up until" their terminations or with sufficient frequency that a reasonable fact-finder could infer a sufficiently close temporal proximity between at least some of Plaintiffs' complaints to their superiors and the alleged adverse employment actions.  For this reason, the Court denies summary judgment as to Plaintiffs' claims of retaliation in violation of Title VII, Section 1981, and NYSHRL.

---

[3]    In contrast to the ample evidence of discriminatory animus for Defendants' adverse employment actions against Plaintiffs, Plaintiffs have provided no evidence that the adverse actions were also motivated by Plaintiffs' complaints to GNC headquarters.

Hostile Work Environment Claims

Plaintiffs contend that Blitzer's offensive remarks about their race and national origin throughout the periods of their employment at GNC created a hostile work environment that violated Title VII, Section 1981, and NYSHRL.  The standard for assessing a hostile work environment claim is both objective and subjective: the alleged victim must perceive the environment to be hostile or abusive, and the conduct must be so severe or pervasive that a reasonable person would find the environment hostile or abusive.  Harris v. Forklift Systems, 510 U.S. 17, 21-22 (1993).  "To withstand summary judgment, a [p]laintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment."  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (internal citations and quotation marks omitted).  "In the end, [d]etermining whether workplace harassment was severe or pervasive enough to be actionable depends upon the totality of the circumstances."  Id.  Additionally, Plaintiffs must demonstrate that the hostile work environment complained of arose from hostility based on the their membership in a protected class.  An environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes.  See Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999); Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 440 (2d Cir. 1999), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

Courts look to a number of non-exclusive factors in evaluating the pervasiveness or severity of the allegedly discriminatory workplace conduct in determining whether a plaintiff has a viable Title VII claim.  Harris, 510 U.S. at 23.  These factors include: (1) the frequency of

discriminatory conduct; (2) its severity, (3) whether the conduct was physically threatening or

humiliating or a "mere offensive utterance;" (4) whether the conduct unreasonably interfered

with the plaintiff's work; and (5) what psychological harm, if any, resulted.  Richardson, 180

F.3d at 437 (internal quotation marks omitted); Harris, 510 U.S. at 23; Quinn v. Green Tree

Credit Corp., 159 F.3d 759, 767-68 (2d Cir. 1998).  Incidents that are isolated or few in number

will seldom support a finding of hostile work environment.  Whidbee, 223 F.3d at 69.  "For

racist comments, slurs, and jokes to constitute a hostile work environment, there must be more

than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there

must be a steady barrage of opprobrious racial comments.  Thus, whether racial slurs constitute a

hostile work environment typically depends upon the quantity, frequency, and severity of those

slurs, considered cumulatively in order to obtain a realistic view of the work environment."

Schwapp v. Town of Avon, 118 F.3d 106, 110-112 (2d Cir. 1997) (internal citations and

quotation marks omitted).  Comments made about other employees who share a plaintiff's

protected trait are also relevant in assessing a hostile work environment claim.  Id.  Hostile work

environment claims present mixed questions of fact and law that are especially well suited for

jury determination.  Richardson, 180 F.3d at 437 (internal quotation marks omitted).

       Defendants argue that the alleged harassment was not severe or pervasive for any

Plaintiff.  However, considering the totality of the circumstances presented, Plaintiffs proffer

enough evidence that a reasonable fact-finder could find that the mistreatment they allege rose to

the level of a hostile work environment.  For example, there is evidence that Blitzer routinely

commented that Richmond should not be allowed to speak to customers because of his accent,

suggested that he used illegal drugs because of his Jamaican heritage, and told him that other

black employees were not doing a good job because of their race and that he didn't want

Richmond to hire black employees.  This, in combination with the evidence that Blitzer fabricated false infractions against Richmond that led to denials of wage increases and Richmond's termination of employment, could lead a reasonable fact-finder to find that Richmond was subjected to a hostile work environment.

There is similar evidence that the harassment Warkie suffered was severe or pervasive.  There is evidence that Blitzer routinely told Warkie to "Go back to Africa," criticized his accent, and advised him that he was being demoted because an African should not be in his position.  Richmond also testified in his deposition that he was directed by Blitzer to fabricate a warning against Warkie, which allegedly led to Warkie's demotion.  A reasonable fact-finder could conclude that Warkie was subjected to a hostile work environment in violation of Title VII, Section 1981, and NYSHRL.

There is also evidence that Siaw was subjected to a hostile work environment. For example, there are allegations that Blitzer frequently called Siaw an "African booty scratcher" and "the bush man," sent him to the back of the store to prevent him from assisting customers on account of his national origin, which affected Siaw's commissions, and told him to "take [his] African self back to Africa."  Richmond has testified that Blitzer told him that he wanted to fire Siaw because of his African heritage, and that Richmond fabricated false infractions against Siaw on Blitzer's orders, which allegedly led to Siaw's ultimate termination. On these grounds, a reasonable fact-finder could find that Siaw was subjected to a hostile work environment.

Hattimore has also proffered evidence upon which a reasonable fact-finder could conclude that he was subjected to a hostile work environment.  In his deposition, Hattimore testified that, when Blitzer saw that he had been hired, Blitzer asked Richmond "why did you

hire another black guy?" (Hattimore Dep. at 69:5-6.) Hattimore further testified that Blitzer made frequent racist comments to him, including that another African American employee was "ghetto black trash" and "you can't take a hoodlum and put him in a business suit."

In short, the Court finds that there is evidence that frequent, highly offensive remarks were made to each Plaintiff over a long period of time, and that this, in combination with Plaintiffs' allegations of adverse employment actions, is sufficient to support a finding that the conduct as a whole rose to the level of hostile work environment. The Court, accordingly, denies Defendants' motion for summary judgment with respect to Plaintiffs' hostile work environment claims under Title VII, Section 1981, and NYSHRL.

Negligent Supervision Claims

Plaintiffs allege that GNC knew of Blitzer's unlawful discriminatory actions against them, and that GNC acted negligently in training and retaining Blitzer. To sustain a claim of negligent supervision in New York, Plaintiffs must show that Blitzer had a propensity for discrimination, that GNC knew or should have known of this propensity and was negligent in hiring and/or retaining him. Sheila v. Povich, 11 A.D.3d 120, 129-30 (N.Y. App. Div. 1st Dept 2004). Defendants dispute Plaintiffs' contentions as to both Blitzer's propensity for discrimination and GNC's knowledge of this alleged propensity.

Given the factual allegations described above, there is sufficient evidence from which a reasonable fact-finder could find that Blitzer had a propensity for discrimination. Likewise, Plaintiffs have proffered sufficient evidence that GNC knew or should have known about this alleged propensity. Plaintiffs have testified that they made numerous complaints to GNC headquarters about Blitzer's discrimination. Moreover, Plaintiffs have provided evidence

of other discrimination lawsuits against GNC alleging similar facts.  For this reason, the Court denies Defendants' motion for summary judgment on Plaintiffs' claim of negligent supervision.

### Wrongful Termination

Plaintiffs also bring a separate claim for wrongful termination.  However, they do not state a statutory or contractual basis for this claim.  Their statutory claim for discriminatory wrongful termination on the basis of race or national origin is subsumed by the Title VII, Section 1981, and NYSHRL claims discussed above.  New York does not recognize common law claims for wrongful termination.  See Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 300-01 (1983).  Therefore, the Court grants Defendants' motion for summary judgment dismissing Plaintiffs' general claim of wrongful termination.

### CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to strike Plaintiffs' opposition to their summary judgment motion in its entirety, as well as Defendants' motion to strike Plaintiffs' affidavits in opposition to summary judgment and the non-party declarations of Gladys Kumi, Kissi Peprah, and Pete Ortiz.  The Court grants Defendants' motion to strike Exhibits A, B, and D to Plaintiffs' opposition to the summary judgment motion.

The Court grants Defendants' motion for summary judgment as to: Count 8; Counts 1 and 2 as against Blitzer; Counts 1, 3, and 5 insofar as they are asserted by Warkie and Siaw and pertain to their demotions; and Count 1 insofar as it is asserted by Siaw and Hattimore. Defendants' motion for summary judgment is denied in all other respects.

This Memorandum Opinion and Order resolves docket entry nos. 49 and 80.

The parties are directed to meet with Magistrate Judge Pitman promptly for settlement purposes and to address any outstanding pretrial issues. As noted above, Plaintiffs are encouraged to retain or associate counsel experienced in federal litigation. Noncompliance with applicable rules and procedural standards will not be indulged going forward.

SO ORDERED.

Dated: New York, New York
     June 22, 2011

LAURA TAYLOR SWAIN
United States District Judge