UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
KENROY RICHMOND et al.,                              :
:
                                  Plaintiffs,        :           08 Civ. 3577 (PAE) (HBP)
:
                 -v-                                 :           OPINION & ORDER
:
GENERAL NUTRITION CENTERS INC. et al.,               :
:
                                  Defendants.        :
:
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        The Court has received two submissions from plaintiffs.  One, dated April 18, 2012, sets

out the anticipated testimony of non-party witnesses Blades, Jeanty, Quarshie, and Peprah.  The

other, dated April 20, 2012, attaches, as the Court had directed, tax records of plaintiffs

Richmond and Hattimore for the years 2006 and 2007.  On May 2, 2012, defendants submitted

an omnibus response to these submissions.  They argue that: (1) with respect to both damages

evidence and the testimony of non-party witnesses, plaintiffs have not complied with prior

Orders of the Court; (2) plaintiffs' failure to produce relevant documents during discovery,

relating to damages, has prejudiced the defense, in particular, by inhibiting its ability to prove

that Richmond and Hattimore failed to mitigate back pay damages; (3) plaintiffs' proffers of the

testimony of the non-party witnesses are insufficiently specific to comply with the Court's

Orders; and (4) plaintiffs improperly propose to elicit third-party witness testimony on the issue

of plaintiffs' emotional distress.  Upon consideration of these submissions, and in light of the

extensive prior litigation on these points, the Court: (1) precludes both Richmond and Hattimore

from seeking back pay damages as to the years 2006 and 2007; but (2) declines to preclude

[1]

categorically the non-party witnesses from testifying, or to preclude them from testifying as to plaintiffs' alleged emotional distress.

## I.      Background

        The four plaintiffs in this case allege that their former employer, General Nutrition Centers ("GNC"), and a former supervisor, Neal Blitzer, subjected them to a hostile work environment and disparate treatment on the basis of race and/or national origin, and retaliated against them for complaining of such treatment.  The allegations in plaintiffs' complaint and the procedural history of this case to December 2011 are set forth at length in the Opinion of the Honorable Laura Taylor Swain, United States District Judge, to whom this case was previously assigned, granting in part and denying in part the defendants' motion for summary judgment. *See Richmond v. GNC*, No. 08-cv-3577, 2011 U.S. Dist. LEXIS 67797, at *1–19 (S.D.N.Y. June 22, 2011).  In that Opinion, Judge Swain also noted plaintiffs' long-standing and glaring inattentiveness to various scheduling Orders.  *See id.* at *13–15, 47.  This Court has also chronicled, at length, plaintiffs' lack of compliance, over several years, with their obligations with respect to discovery.  *See Richmond v. GNC*, No. 08-cv-3577, 2012 U.S. Dist. LEXIS 32070, at *8–13 (S.D.N.Y. Mar. 9, 2012).

        On December 23, 2011, defendants filed three motions *in limine*.  Dkt. 102, 105, 107.  As relevant here, two of those motions sought, respectively, to preclude plaintiffs from presenting damages evidence, based on plaintiffs' non-compliance with discovery requests relating to damages, and to preclude plaintiffs from introducing the testimony of non-party witnesses.  In an Opinion & Order dated March 9, 2012, the Court found that plaintiffs had blatantly failed to satisfy their discovery obligations as to damages, including failing to comply with an Order of the Magistrate Judge.  However, the Court gave plaintiffs an opportunity to show that their

failure to produce the evidence in question was harmless—*i.e.*, that it worked no prejudice to defendants. *See* Dkt. 116 at 11 n.4, 16. The Court also reserved decision on whether to preclude the testimony of non-party witnesses, because the content of their anticipated testimony was, as yet, unclear. *Id.* at 17–18. The Opinion set forth a procedure by which the parties were to exchange detailed descriptions of anticipated trial testimony and other evidence and, if necessary, file additional motions *in limine* on March 23, 2012, the date the Joint Pretrial Order was due. *Id.* at 19–20.

On March 23, 2012, defendants filed additional motions *in limine* seeking, again, to exclude plaintiffs' damages evidence and the testimony of non-party witnesses. *See* Dkt. 121, 124. Defendants argued that plaintiffs had failed to show that their non-production of damages evidence was harmless, and that this nonproduction was in fact highly prejudicial. Defendants also moved to preclude the limited damages evidence that the plaintiffs *had* allegedly produced in discovery, on the basis that the isolated documents that were produced yielded an incomplete picture of plaintiffs' damages, and had prevented defendants from meaningfully developing proof that plaintiffs had failed to mitigate their back pay damages. *See* Dkt. 123. Defendants also moved again to preclude various non-party witnesses from testifying. *See* Dkt. 125. On March 28, 2012, plaintiffs opposed these motions. *See* Dkt. 130, 131.

On April 2, 2012, the Court held a pretrial conference and ruled, at length, on the record, as to various pending motions. By Order dated April 4, 2012, the Court memorialized those rulings. The Court (1) excluded all back pay damages for plaintiffs Siaw and Warkie; (2) excluded back pay damages for plaintiffs Richmond and Hattimore for the period beginning January 1, 2008; and (3) as to back pay damages for the years 2006 and 2007, reserved judgment, based on plaintiffs' counsel's claim, made at the conference, that they had in fact

timely produced Richmond's and Hattimore's 2006 and 2007 tax returns to the defense during the discovery period. *See* Dkt. 133.[1]  The Court directed plaintiffs' counsel to submit evidence substantiating that they had timely produced such materials to the defense.[2]  As relevant here, the Court's Order reserved judgment on the admissibility of testimony of non-party witnesses Catherine Blades, Virginia Jeanty, Gladys Kumi, Sulayman Mbenga, Kissi Peprah, Emmanuel Quarshie, and Lena Shockley.  The Court gave plaintiffs until April 9, 2012 to submit detailed summaries of the proposed testimony of these witnesses, to enable the Court could make an informed decision on admissibility. *Id.* at ¶ 6.a–g.

On April 4, 2012, plaintiffs' counsel faxed a declaration to the Court, attaching exhibits, purporting to demonstrate that Richmond's 2006 and 2007 tax returns had been produced to the defense on or about May 28, 2009, and that Hattimore's 2006 and 2007 tax returns had been produced on or about August 4, 2009.  Davis April 4, 2012 Decl. ¶¶ 7, 14.  On April 9, 2012, plaintiffs submitted summaries of the anticipated testimony of various non-party witnesses, as the Court had requested.

By Order dated April 11, 2012, the Court ruled that testimony of Kumi, Mbenga, and Shockley would be permitted; it reserved decision on the testimony of Blades, Jeanty, Quarshie, and Peprah, because plaintiffs' proffer of that testimony was, once again, insufficiently specific. *See* Dkt. 134 ¶¶ 2–3.  The Court gave plaintiffs until April 18, 2012 to submit, once again, an adequately detailed summary of those witnesses' proposed testimony. *Id.*

---

[1] The Court ruled that it would permit plaintiffs to seek to establish emotional distress and punitive damages.

[2] At the conference, plaintiffs clarified that they are not seeking front pay damages. Accordingly, the Court's orders relating to lost wages solely addressed claims for back pay.

[4]

On April 12, 2012, defendants submitted a letter disputing the completeness of plaintiffs' prior production of Richmond's and Hattimore's 2006 and 2007 tax returns.  Specifically, defendants stated that the returns produced for Hattimore  were not actual tax returns, but instead appeared to be summary documents produced by H&R Block, stamped "Draft – Do Not File." Defendants also argued that the tax returns produced for plaintiff Richmond were incomplete, in that they failed to include schedules that would have revealed, *inter alia*, Richmond's business income from Cream Malibu, Inc., during the years in question, and that the failure to produce this information had impaired the defense from developing evidence of Richmond's failure to mitigate damages.

By Order dated April 12, 2012, the Court ordered plaintiffs to produce, by April 20, 2012: (1) the *actual* 2006 and 2007 tax returns for Hattimore, as filed with the IRS; and (2) *all* schedules and attachments for Richmond's 2006 and 2007 tax returns sufficient to show *all* of Richmond's income or income offsets.  *See* Dkt. 135.

On April 18, 2012, plaintiffs submitted another declaration describing the anticipated testimony of non-party witnesses Blades, Jeanty, Quarshie, and Peprah.

On April 20, 2012, plaintiffs submitted additional tax records for Richmond and Hattimore, in response to the Court's April 12 Order.  On May 2, 2012, defendants submitted an omnibus response to plaintiffs' submissions.

## II.   Discussion

Defendants argue that plaintiffs should be precluded from proving the remaining back pay damages for Richmond and Hattimore, *i.e.*, for 2006 and 2007, because: (1) as to Hattimore, plaintiffs simply failed to comply with the Court's April 12 Order requiring the production of Hattimore's tax returns, and those returns were not produced within the discovery period; and (2)

[5]

as to Richmond, plaintiffs have still failed to produce all relevant schedules to Richmond's tax returns for those years, and the evidence that has now been produced demonstrates that plaintiffs' failure to produce this evidence during discovery prejudiced defendants' ability to develop a defense of failure to mitigate.  As to the testimony of the four non-party witnesses, defendants argue that plaintiffs have failed to satisfactorily specify the proposed testimony of these witnesses, and that the testimony that has been proffered is irrelevant or otherwise inadmissible.

For the following reasons, the Court agrees with defendants that plaintiffs Richmond and Hattimore should be precluded from pursuing back pay for the years 2006 and 2007.  However, the Court declines to exclude, in its entirety, the testimony of the various non-party witnesses in question.

### A.    Plaintiff Richmond

On April 4, 2012, plaintiffs provided the Court with copies of the materials relating to the 2006 and 2007 tax returns that they had previously produced for Richmond and Hattimore.  As to Richmond, those documents included: (1) a record of Richmond's unemployment compensation earned in 2008 (Richmond 73); (2) Richmond's 2008 W-2 from the Vitamin Shoppe (Richmond 72); (3) Richmond's 2007 W-2 from the Vitamin Shoppe (Richmond 70); (4) Richmond's 2007 Form 1040, without schedules or attachments (Richmond 68–69); (5) Richmond's 2006 W-2 from Cream Malibu, Inc., (Richmond 67); and (6) Richmond's 2006 Form 1040, without schedules or attachments (Richmond 63–64).[3]

---

[3] Richmond produced to the defense several W-2s issued to him by defendant GNC.  Richmond also produced certain 2005 tax information, but the 2005 year pre-dated his termination from GNC, and hence is irrelevant to the issues here.

On April 20, 2012, as directed by the Court's Order of April 12, 2012, plaintiffs provided the Court with copies of Richmond's 2006 and 2007 tax returns, including some, but not all, annexed schedules.

Specifically, as to 2006, the materials which Richmond has now come forward with include: (1) a Form 8283, reporting nearly $4,500 in charitable contributions by Richmond during that year; (2) a Form 2106-EZ, reporting $4,261 in unreimbursed employee business expenses; (3) another Form 2106 EZ, reporting $10,859 in unreimbursed employee business expenses;[4] (4) a Schedule A, showing various itemized deductions; and (5) a Schedule E, showing a $14,259 "nonpassive loss" from Cream Malibu, Inc.  According to the Schedule E, the $14,259 loss number was derived from Richmond's Schedule K-1.  However, no 2006 Schedule K-1 was included in plaintiffs' April 20, 2012 submission.

As for 2007 records, the materials which Richmond has now come forward with include: (1) Richmond's Form 1040; (2) a Form 2106-EZ, reporting $245 in unreimbursed employee business expenses; (3) a Form 8283, reporting $3,800 in charitable donations; (4) a Schedule A reporting $12,082 in itemized deductions; (5) a Schedule B, reporting $3,984 in interest received from TD Banknorth; (6) a Schedule E reporting a $7,497 loss from Cream Malibu, Inc.; (7) another Form 2106-EZ, reporting $1,982 in unreimbursed employee business expenses; and (8) another Form 2106-EZ, reporting $4,682 in unreimbursed business expenses.  As with 2006, Richmond's 2007 Schedule E reports the loss number as having been derived from a Schedule K-1, but no such schedule was produced to the Court.

---

[4] Although Richmond does not explain his submission of multiple Forms 2106-EZ, presumably one Form 2106-EZ pertains to his employment at defendant GNC, and the other pertains to his side business, Cream Malibu, Inc.

[7]

Having reviewed these materials, the Court concludes, with regret, that it is appropriate to preclude Richmond from pursuing back pay damages for the years 2006 and 2007. The Court does not minimize the significance of this ruling, which has the effect of limiting the damages Richmond may seek to emotional distress and punitive damages. However, the hard fact is that Richmond's counsel repeatedly failed to produce materials regarding these years that were responsive to valid discovery requests, and clearly relevant to a potential defense of failure to mitigate, and plaintiffs' counsel failed to comply with its duty to produce such materials even after an order to do so was issued by Magistrate Judge Pitman. *See* Dkt. 41. Even as of today, after a series of orders and extended litigation on this issue, Richmond has yet to come forward with "all schedules and attachments" for his 2006 and 2007 tax returns, as the Court ordered, in its attempt to give plaintiffs every opportunity to demonstrate the absence of harm from their production lapses. Specifically, Richmond has not come forward with the Schedules K-1 for the years 2006 and 2007, even though his tax returns for those years each clearly reflect that a constituent figure on those tax returns is derived from a Schedule K-1.

The Court finds that Richmond's failure to produce responsive materials in discovery was clearly prejudicial to the defense with respect to the issue of back pay damages. The materials that were not timely produced reveal that, both during and after ceasing his employment at GNC, Richmond was running a business, Cream Malibu, Inc., apparently a franchise of a national chain of ice-cream stores. Richmond's income from that store, and his ability to earn income from that store, during the two years at issue, are clearly relevant to mitigation. However, the only document that Richmond timely produced as to Cream Malibu was a single W-2, covering 2006; no such W-2 covering 2007 was timely produced, nor has Richmond, to date, come forward with a W-2 for that year. The defense would have legitimately

[8]

been entitled to probe Richmond's income, and potential income, from Cream Malibu, during both years.

Further, the fact that Richmond was an owner of Cream Malibu, as opposed to a mere employee, would have justified broadened discovery, including into whether, during 2006 and 2007, he earned income, such as partnership income, that was not reported as W-2 wages from that establishment. As noted, Richmond has never come forward (in discovery or in response to the Court's orders) with Schedule K-1s from Cream Malibu for either 2006 or 2007. Therefore, the defense and the Court can only speculate what these schedules would have revealed or what follow-on discovery would have revealed. Because Richmond failed to produce these records, the defense was hobbled in pursuing theories of non-mitigation relating to Cream Malibu. It was unable to quantify the amount of a potential mitigation offset, based on the calculation of Richmond's partnership income as reflected on those Schedule K-1s or follow-on discovery.

The Court further notes that Richmond testified at his deposition that, in 2007, he bought out his business partner's interest in Cream Malibu, which led him to not report any income from Cream Malibu as to that year. The defense had a legitimate right to use the Cream Malibu K-1s, and discovery flowing therefrom, to test whether in fact Richmond had income (potentially substantial income) for 2007 that, whether or not reinvested into the business for the purpose of buying out his partner, properly could have served as an offset to any back pay award received at trial.

Finally, Richmond's tax returns reveal reasonably substantial charitable deductions for both years. Had this information been produced in discovery, the defense could reasonably have explored the sources of the funds used to make those contributions and, if in the form of income earned for the tax year, whether such income should offset any back pay award.

[9]

Because the defense has persuasively demonstrated prejudice from Richmond's non-production of 2006 and 2007 documents, and because Richmond has not made more than a conclusory claim of harmlessness, the Court is constrained to preclude Richmond from seeking back pay damages at trial. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii); *Vaccaro v. Waterfront Homes Marina*, No. 10-cv-4288, 2011 U.S. Dist. LEXIS 137036, at *10–12 (S.D.N.Y. Nov. 30, 2011); *Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 270–71 (S.D.N.Y. 2011); *Rojo v. Deutsche Bank*, No. 06-cv-13574, 2009 U.S. Dist. LEXIS 110848, at *13–16 (S.D.N.Y. Oct. 30, 2009).

### B.  Plaintiff Hattimore

As to Hattimore, on April 12, 2012, the Court ordered Hattimore to produce his 2006 and 2007 tax returns, "in the form in which they were filed with the IRS." *See* Dkt. 135.  The Court pointedly found insufficient, for purposes of assessing whether Hattimore's non-production had been harmless, the H&R Block "draft" tax returns that plaintiffs had already produced on or about April 4, 2012:  the Court's April 12, 2012 order clearly stated that such draft tax documents were inadequate.  Plaintiffs, however, simply did not comply with this Order.  They merely sent in, again, the identical draft tax returns (bates-stamped Richmond 174–185 and Richmond 186–195) that the Court had found to be insufficient.

Plaintiffs' failure to produce the actual returns is particularly inexcusable, inasmuch as Judge Pitman ordered plaintiffs, on August 6, 2009, to obtain their tax returns directly from the IRS and to produce them to the defense.  Dkt. 41.  More than two and a half years later, plaintiffs have still failed to comply with this Order.[5]  Plaintiffs' failure to heed this Court's Order and Judge Pitman's Order would, alone, amply justify barring plaintiffs from presenting a claim or

---

[5] The IRS website clearly sets out the multiple avenues by which taxpayers may request formal copies of their prior returns.  *See* http://www.irs.gov/taxtopics/tc156.html.

defense as to which these tax returns were probative evidence.  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii).

Moreover, Hattimore's submission reveals that even these inadequate "drafts" of his tax returns were not timely produced in discovery.  The Court had afforded plaintiffs the opportunity to demonstrate that, as to 2006 and 2007, Hattimore had in fact timely produced his tax returns. *See* April 2, 2012 Tr. 77:10–14 ("there is a dispute as to whether Mr. Hattimore's 2006 and 2007 tax returns were timely produced.  Again, I will give the plaintiffs until Wednesday to demonstrate that they were, and if they were, I will permit Mr. Hattimore to pursue lost wages damages for those two years.").  Plaintiffs' submission in response reveals, however, that the "draft" tax returns were not produced until August 4, 2009, several weeks after discovery closed. For this reason, too, it is proper to preclude Hattimore from pursuing categories of damages as to which such evidence would reasonably have been relevant.  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii).

Finally, the Court credits defendants' argument that they have been prejudiced by the fact that Hattimore's tax returns were never produced.  Although plaintiffs' failure to come forward even now with indisputably authentic tax returns for Hattimore necessarily forces the Court to speculate as to what those returns might have shown, the draft returns indicate that, after ceasing work at GNC, Hattimore, in 2006, was employed by a company named Carrols Corporation. Had the defense received authentic tax returns during discovery that revealed such employment, it could have undertaken third party discovery to investigate Hattimore's employment at Carrols (*e.g.*, his income, hours, rate of pay, and the reason for resignation or termination, if any).  Such evidence could easily have substantiated a claim that Hattimore had failed to mitigate damages, in whole or part.  Notably, plaintiffs, for their part, have not argued that the failure to produce Hattimore's tax returns was harmless.  Accordingly, as with Richmond, the Court will preclude

Hattimore from pursuing back pay at trial. Fed. R. Civ. P. 37(b)(2)(A)(ii); *Vaccaro*, 2011 U.S. Dist. LEXIS 137036, at \*10–12; *Chanel*, 795 F. Supp. 2d at 270–71; *Rojo*, 2009 U.S. Dist. LEXIS 110848, at \*13–16. He remains, however, free to pursue emotional distress and punitive damages.

### C.   Emotional Distress Testimony

Defendants also ask the Court to preclude any testimony from non-party witnesses Peprah, Mbenga, Jeanty, Quarshie, Blades, Kumi, and Shockley on the topic of plaintiffs' emotional distress, arguing that eliciting emotional distress testimony from these witnesses would violate the Court's Order at the final pretrial conference. *See* April 2, 2012 Tr. at 83. That is not the case. The Court's Order at the April 2, 2012 final pretrial conference limited the *plaintiffs* to their prior deposition testimony on the topic of emotional damages; it did not apply to the testimony of third-party witnesses who were initially disclosed by plaintiffs but whom the defense chose not to depose. *See* Dkt. 116 at 3–4.

### D.   Proffers of Witness Testimony

Defendants also ask the Court to preclude categorically the testimony of Blades, Jeanty, Quarshie, and Peprah. As to all but Peprah, defendants claim that the proffers received from plaintiffs are too vague. The Court disagrees. Although much of the proffered testimony is likely inadmissible—*e.g.*, the witnesses' subjective feelings about perceived discrimination, hearsay comments of others about Blitzer's alleged acts of discrimination—there are portions of testimony which appear probative as to, *inter alia*, discriminatory intent. The Court, therefore, declines to categorically preclude their testimony. The Court will entertain appropriate motions *in limine* prior to the witnesses' testimony to limit the scope of such testimony.

As to Peprah, defendants claim that his testimony regarding plaintiff Warkie's demotion and work performance is irrelevant because, even though Peprah was Warkie's direct supervisor, he was not a decision-maker as to Warkie's demotion. *See Scott. v. Mem'l Sloan-Kettering Cancer Ctr.*, 190 F. Supp. 2d 590, 598 (S.D.N.Y. 2002) (observing that statements by a non-decision-maker are not probative of discriminatory intent in an adverse employment action). Defendants are correct that Peprah's personal, subjective views as to the decision-makers' motives for demoting Warkie are, without more, irrelevant. However, plaintiffs also proffer other testimony from Peprah about remarks by defendant Blitzer made in Peprah's presence, which appear to be relevant and probative. In sum, Peprah's testimony, too, is not categorically inadmissible, and the Court therefore declines to exclude that testimony in its totality.

## CONCLUSION

For the foregoing reasons, the Court precludes plaintiffs Richmond and Hattimore from pursuing back pay damages as to the years 2006 and 2007. The Court denies defendants' motion to categorically preclude non-party witnesses Blades, Jeanty, Quarshie, and Peprah from testifying, and similarly declines to preclude non-party witnesses from offering admissible testimony as to plaintiffs' emotional distress.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 11, 2012
       New York, New York